**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANET ROSS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHURCH & DWIGHT CO., INC.,<br><br>Defendant. | Civil Action No.: 26-cv-6491<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Janet Ross ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based upon her personal knowledge:

1. This action seeks to remedy the deceptive and misleading business practices of Defendant Church & Dwight Co., Inc. ("Church & Dwight" or "Defendant") with respect to the manufacturing, marketing, advertising, and sale of Defendant's Orajel Naturals line of anti-cavity fluoride toothpastes for children (collectively, the "Products" or "Class Products"), in the State of New York and throughout the United States.

2. For years, parents, caregivers, and others responsible for the care of infants and young children have purchased Orajel-branded children's toothpastes in reasonable reliance on Defendant's affirmative, prominent, and uniform representations that the Products are "natural"—representations made in the brand name itself ("Orajel Naturals") and in the very names of the Products' flavors ("Natural Fruity Bubbles," "Natural Berry," "Natural Watermelon").[1]

---

[1] See, e.g., Orajel Kids, PAW Patrol Anticavity Fluoride Toothpaste, https://www.orajelkids.com/en/products/fluoride-toothpaste/orajel-kids-paw-patrol-anticavity-fluoride-toothpaste (last visited Sept. 15, 2026); Orajel Kids Paw Patrol Anti-Cavity Fluoride Toothpaste, Natural Fruity Bubble Flavor, Amazon.com, https://www.amazon.com/Orajel-Patrol-Anticavity-Fluoride-Toothpaste/dp/B00IUU15GA (last visited Sept. 15, 2026); Orajel Naturals Toy Story 5 Anti-Cavity Fluoride Toothpaste, Natural Watermelon Flavor,

3. These affirmative representations—which appear prominently on the packaging of the Products and are repeated on Defendant's websites, retailer websites and online product listings, in-store retail displays, and other consumer-facing marketing channels—communicate to a reasonable consumer that the Products are natural products, free of synthetic and artificial ingredients, and suitable for daily use in the mouths of infants and young children.

4. Defendant's representations are materially false and misleading. Every one of the Products is formulated with cocamidopropyl betaine ("CAPB"), a synthetic detergent that exists nowhere in nature and can be produced only through multi-step industrial chemical synthesis using synthetic reagents.[2] A toothpaste formulated with an industrially synthesized surfactant is not a product that a reasonable consumer would understand to be "natural," much less a product a reasonable consumer would understand a brand called "Naturals" to be selling.

5. Defendant's representations are deceptive in context, and are rendered more so by how Defendant describes CAPB in the one place a diligent consumer might look. On the Products' ingredient panels, Defendant annotates the ingredient as "Cocamidopropyl Betaine (coconut-derived)"—dressing an industrial detergent in the language of the produce aisle. The coconut contributes only a fatty-acid feedstock; the molecule that ends up in a child's mouth exists in no coconut on earth. The one place a consumer might learn the truth is the very place Defendant chose to repeat the deception.

6. Defendant uniformly markets the Products with packaging that prominently displays the "Orajel Naturals" brand name and "Natural" flavor representations, in colorful

---

Walmart.com, https://www.walmart.com/ip/Orajel-Toy-Story-Watermelon-5-8oz/18363870587 (last visited Sept. 15, 2026) (advertising "over 99 percent naturally sourced ingredients").

[2] Sharon E. Jacob & Sadegh Amini, Cocamidopropyl Betaine, 19 Dermatitis 157 (2008) (describing CAPB as "an amphoteric synthetic detergent" used in, among other things, toothpastes); Christina L. Burnett et al., Final Report of the Cosmetic Ingredient Review Expert Panel on the Safety Assessment of Cocamidopropyl Betaine (CAPB), 31 Int'l J. Toxicology (Supp. 2) 77S (2012), doi:10.1177/1091581812447202.

character-themed packages (including PAW Patrol, Super Mario, and Toy Story) designed to appeal to parents of young children. A picture of the Product Plaintiff purchased appears below:[3]




7. These representations would lead a reasonable consumer to believe that the Products contain no synthetic or artificial ingredients. The presence of CAPB—a synthetic

---

[3] A true and correct copy of the Product's full labeling is maintained by the U.S. National Library of Medicine. See DailyMed, Orajel Naturals Paw Patrol Anticavity Fluoride Toothpaste (label), https://dailymed.nlm.nih.gov/dailymed/fda/fdaDrugXsl.cfm?setid=99d87bea-3e99-5d04-e053-2a95a90aaf54 (last visited Sept. 15, 2026).

surfactant carrying residual synthetic manufacturing impurities—materially contradicts each of those representations.

8. Capitalizing on the premium that "natural" commands—particularly among parents purchasing products that go directly into, and are inevitably partially swallowed from, the mouths of young children—Defendant charges more for the Products than comparable children's toothpastes not marketed as natural. Plaintiff and Class Members paid that premium and did not receive what they paid for.

**<u>DEFENDANT'S AFFIRMATIVE MISREPRESENTATIONS</u>**

9. The Products are not marketed to consumers as ordinary, commodity toothpastes. They are branded, labeled, and sold as "Naturals"—a representation Defendant makes in the brand name itself and reinforces at every consumer touchpoint: flavor names that lead with the word "Natural," and ingredient-panel annotations tying each ingredient to a natural source ("vegetable," "tree pulp," "mineral," "coconut-derived"). These affirmative representations are the central marketing message of the Products and a principal reason reasonable consumers purchase them.

10. These statements—taken as a whole and in the context of a toothpaste formulated for daily use by children ages two and up, whose own labeling instructs parents to supervise brushing "to minimize swallowing"—communicate to a reasonable consumer that the Products contain only natural ingredients and are free of synthetic chemicals.[4]

11. The representations are false. Each of the Products is formulated with CAPB, an amphoteric synthetic detergent. CAPB is manufactured by reacting fatty acids—which may originate from coconut or palm oil—with dimethylaminopropylamine ("DMAPA"), a synthetic

---

[4] See DailyMed label, supra note 3 (directions for children under six years of age, including supervision "to minimize swallowing").

petrochemical amine, to form an amidoamine intermediate, which is then reacted with sodium chloroacetate, another synthetic reagent, to yield the finished surfactant. Two synthetic reagents, two chemical reactions, one synthetic ingredient.[5]

12. That CAPB's fatty-acid feedstock may derive from coconut does not make CAPB natural. The molecule sold and used in the Products does not exist in coconuts or in any other natural source.[6]

13. Nor does the synthesis come out clean. Commercially manufactured CAPB carries residual synthetic impurities from its own production—unreacted DMAPA and amidoamine—which the peer-reviewed dermatological literature identifies as the true sensitizing agents in CAPB. CAPB is a recognized skin sensitizer, and the American Contact Dermatitis Society named it "Allergen of the Year" in 2004.[7]

14. A reasonable consumer purchasing a children's toothpaste branded "Naturals"—particularly for daily use by a young child who will inevitably swallow some portion of it—would attach material importance to the truth of Defendant's representations. Reasonable consumers do not understand a "Naturals" toothpaste sold in "Natural" flavors to be formulated with an industrially synthesized detergent, and would not have purchased the Products, or would not have paid the price they paid, had Defendant's representations been truthful.

---

[5] See Burnett et al., supra note 2 (describing the commercial synthesis of CAPB from fatty acids or their derivatives reacted with 3-(dimethylamino)propylamine, followed by reaction with sodium chloroacetate).

[6] Defendant's own consumer-facing materials describe the ingredient as "Cocamidopropyl Betaine (coconut-derived)." See Orajel Kids, What Are the Ingredients in Kids Toothpaste?, https://www.orajelkids.com/en/resources/what-are-the-ingredients-in-kids-toothpaste (last visited Sept. 15, 2026).

[7] See Cocamidopropyl Betaine, 15 Dermatitis 3 (2004) (American Contact Dermatitis Society "Allergen of the Year" designation); Marcos Hervella et al., Contact Allergy to 3-Dimethylaminopropylamine and Cocamidopropyl Betaine, 97 Actas Dermo-Sifiliográficas 189 (2006), doi:10.1016/s0001-7310(06)73378-6 (identifying DMAPA and amidoamine manufacturing impurities as the true allergens in commercial CAPB); Ronni Wolf et al., Contact Dermatitis: Facts and Controversies, 31 Clinics in Dermatology 467 (2013), doi:10.1016/j.clindermatol.2013.01.014.

15. The Federal Trade Commission has recognized that this genre of marketing is deceptive, repeatedly taking enforcement action against personal-care companies that marketed products as "all natural" or "100% natural" while formulating them with synthetic ingredients, on the ground that reasonable consumers understand such claims to exclude synthetics.[8]

16. Plaintiff does not contend that Defendant was required to add any statement, warning, or disclosure to the Products' labels, and Plaintiff seeks no such relief. Plaintiff's claims rest entirely on the affirmative falsity of the "natural" representations that Defendant voluntarily chose to make, and the relief Plaintiff seeks is that Defendant stop making them. Federal law itself prohibits labeling that is "false or misleading in any particular," 21 U.S.C. § 352(a)(1), and Plaintiff's claims would impose no requirement different from or in addition to that federal prohibition.

## PLAINTIFF AND THE CLASS REASONABLY RELIED ON DEFENDANT'S REPRESENTATIONS

17. Plaintiff and Class Members purchased the Products in reasonable reliance on Defendant's affirmative representations that the Products are "Naturals" and "Natural," and on the corresponding implicit representation that the Products contain no synthetic ingredients.

18. The synthetic character of an ingredient is not something a consumer can see, smell, taste, or touch. Nothing about the Products' appearance or performance reveals that they contain a synthetic surfactant, at the point of purchase or at the time of use.

19. Determining that cocamidopropyl betaine is synthetic requires familiarity with industrial surfactant chemistry—knowledge of amidation reactions, petrochemical amines, and

[8] Press Release, Fed. Trade Comm'n, Four Companies Agree to Stop Falsely Promoting Their Personal-Care Products as "All Natural" or "100% Natural"; Fifth Is Charged in Commission Complaint (Apr. 2016), https://www.ftc.gov/news-events/press-releases/2016/04/four-companies-agree-stop-falsely-promoting-their-personal-care.

quaternization—that is far beyond the ken of an ordinary consumer. Plaintiff and Class Members are not chemists. They lack the specialized scientific knowledge necessary to recognize "Cocamidopropyl Betaine (coconut-derived)" as an industrially synthesized detergent rather than a coconut extract.

20. Defendant's representations are unequivocal and uniform, and nothing on the Products' labeling retracts them—not on the front label, not on the back label, not in the ingredient list, not on Defendant's websites, and not in any other consumer-facing channel. To the contrary: the ingredient panel's "coconut-derived" annotation affirmatively reinforces the false representation, steering even the most diligent consumer away from the truth.

21. The Food and Drug Administration has never promulgated a regulation defining "natural" for cosmetics or over-the-counter drug products, and no government-published database would permit an ordinary consumer to verify whether a particular "Naturals" product is in fact natural.[9]

22. Accordingly, Plaintiff and Class Members reasonably relied on Defendant's representations at the time of purchase and had no reasonable way of learning that those representations were materially false and misleading.

## <u>JURISDICTION AND VENUE</u>

23. This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs; the proposed Class consists of more than 100 members; and

---

[9] Even for foods, the FDA has never defined "natural" by regulation. See Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments, 80 Fed. Reg. 69,905 (Nov. 12, 2015). The FDA monograph governing anticaries fluoride toothpastes addresses fluoride active ingredients and cavity-prevention labeling, and says nothing about "natural" claims or the sourcing of inactive ingredients. See 21 C.F.R. pt. 355.

minimal diversity exists in that at least one member of the proposed Class is a citizen of a State different from Defendant, which is, on information and belief, a Delaware corporation with its principal place of business in Ewing, New Jersey.

24. This Court has personal jurisdiction over Defendant because Defendant transacts substantial business in this District, including by marketing, distributing, and selling the Products in this District, and a substantial part of the events giving rise to the claims occurred in this District.

25. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District, including Plaintiff's purchase of the Product while residing in Suffolk County, New York, and Defendant's marketing, distribution, and sale of the Products in this District.

## PARTIES

**Plaintiff Janet Ross**

26. Plaintiff Janet Ross is a citizen and resident of St. James, Suffolk County, New York.

27. In or about July 2025, Plaintiff purchased Orajel Naturals PAW Patrol Anti-Cavity Fluoride Toothpaste ("Natural Fruity Bubbles" flavor) through Amazon.com, for use by a young child in her household.

28. Prior to making her purchase, Plaintiff viewed Defendant's representations on the Product and in its online product listing—including the "Orajel Naturals" brand name and the "Natural Fruity Bubbles" flavor designation. Plaintiff reasonably understood these representations to mean that the Product contained only natural ingredients and no synthetic chemicals. Nothing Plaintiff saw or read indicated otherwise.

29. Plaintiff reasonably relied on Defendant's representations in deciding to purchase the Product. Plaintiff would not have purchased the Product, or would not have paid the price she paid, had she known that it was formulated with an industrially synthesized detergent.

30. Plaintiff did not receive the benefit of her bargain. She received a product materially different from, and worth materially less than, the product as represented. Plaintiff suffered an actual injury in the form of her purchase price, or alternatively the price premium attributable to Defendant's materially false and misleading representations.

31. Plaintiff continues to desire to purchase genuinely natural children's toothpaste and would purchase the Products in the future if Defendant's "natural" representations were made truthful, but at present she has no reasonable way to rely on them.

**Defendant**

32. Defendant Church & Dwight Co., Inc. is, on information and belief, a corporation organized under the laws of the State of Delaware with its principal place of business in Ewing, New Jersey. Church & Dwight, directly or through its subsidiaries, affiliates, agents, distributors, contractors, and/or licensees, formulates, manufactures, markets, advertises, distributes, and sells the Products in the State of New York and throughout the United States under the Orajel brand. Church & Dwight created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Products.

## FACTUAL ALLEGATIONS

33. The Orajel children's line is built on a uniform brand identity as a natural, parent-trusted oral-care line for infants and young children. The cornerstone of that identity is the word "natural" itself: the "Orajel Naturals" brand name and flavor names that lead with the word "Natural."

34. The Products are Defendant's Orajel Naturals anti-cavity fluoride toothpastes for children ages 2–10, sold in character-themed packaging in multiple flavor varieties. Each Product is formulated with CAPB, and each is marketed, on information and belief, pursuant to substantially the same brand strategy, labeling conventions, and consumer-facing representations, such that the allegations concerning any one Product are representative of the Products as a class.

35. Defendant uniformly makes its "natural" representations on the front of package, on the back of package, in the Products' labeling and marketing copy, on Defendant's websites, on retailer websites and online product listings, and in other consumer-facing communications.

36. Cocamidopropyl betaine is described in the peer-reviewed dermatological literature as an amphoteric synthetic detergent used in shampoos, toothpastes, and cleansers. It is a creature of the chemical industry, not of nature: it does not occur in any plant, animal, or mineral, and cannot be extracted, pressed, distilled, or fermented from anything found in nature. It can only be built in an industrial reactor, through the multi-step synthesis described above.[10]

37. As a sophisticated manufacturer of consumer packaged goods—including over-the-counter drug products subject to FDA current Good Manufacturing Practice requirements—Defendant maintains detailed specifications for every ingredient in the Products, including CAPB. Defendant selected CAPB for the Products' formulas, purchases it from chemical suppliers, and knows precisely what it is and how it is made.

38. A manufacturer does not formulate a product with an industrially synthesized detergent and then discover, to its surprise, that the product contains one. Defendant knew at all relevant times that the Products contain a synthetic ingredient, and it branded them "Naturals" anyway.

[10] Jacob & Amini, supra note 2, at 157.

39. Defendant's election to annotate CAPB as "coconut-derived" on the ingredient panel confirms both knowledge and intent. That gloss makes sense only as an effort to manage the obvious tension between Defendant's formula and Defendant's branding—to preserve the "natural" message even for the consumer diligent enough to read the fine print.

40. Defendant's representations are material. Reasonable consumers care what is in the products their children put in their mouths, and care particularly whether a product branded "Naturals" is in fact natural. Defendant knew, or should have known, that its representations were material to consumers, who would not purchase a "Naturals" toothpaste that they understood to be formulated with a synthetic detergent—or would pay materially less for it.

41. Defendant's representations are material in that a reasonable person would attach importance to them and would be induced to act upon them in making purchase decisions.

## CLASS ALLEGATIONS

42. Plaintiff brings this matter on behalf of herself and those similarly situated. As detailed at length in this Complaint, Defendant's deceptive marketing and labeling practices were uniform and were directed at, and exposed to, all of Defendant's customers. Accordingly, this action is properly maintained as a class action under Federal Rule of Civil Procedure 23.

43. Plaintiff seeks certification of the following classes (together, the "Class"):

**Nationwide Class:** All persons who, during the Class Period, purchased the Products in the United States for personal use, and not for resale.

**New York Subclass:** All persons who, during the Class Period, purchased the Products in the State of New York for personal use, and not for resale.

44. Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, judicial officers and their immediate family members and associated court staff

assigned to this case, and any persons who purchased the Products for purposes of resale or distribution.

45. The "Class Period" means the period from the maximum date allowed by the applicable statute of limitations through the date of class notice. Plaintiff reserves the right to amend or modify the Class definition, or to propose one or more additional subclasses, as appropriate in light of discovery and any rulings of the Court.

46. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the prerequisites of numerosity, commonality, typicality, and adequacy, because:

47. *Numerosity:* Class Members are so numerous that joinder of all members is impracticable. The Products are sold nationwide through major brick-and-mortar retailers and online, and Plaintiff believes there are at least thousands of Class Members who have been damaged by Defendant's materially false and misleading representations.

48. *Commonality:* Common questions of law and fact predominate, including: whether Defendant manufactured, marketed, advertised, and sold the Products to consumers; whether Defendant uniformly represented that the Products are "Naturals" and "Natural"; whether those representations would lead a reasonable consumer to believe that the Products contain no synthetic ingredients; whether cocamidopropyl betaine is a synthetic ingredient; whether Defendant's representations were materially false and misleading; whether Defendant knew its representations were false; whether reasonable consumers would have purchased the Products, or would have paid the same price for them, had they known the truth; and whether Plaintiff and the Class are entitled to relief.

49. *Typicality:* Plaintiff's claims are typical of those of the Class because Plaintiff, like all Class Members, purchased the Products for personal use during the Class Period and was

injured by Defendant's uniform, materially false and misleading representations in the same manner.

50. *Adequacy:* Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class.

51. *Predominance:* Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class. The Class issues fully predominate because no inquiry into individual conduct is necessary; all that is required to establish liability is a determination of whether Defendant's uniform representations are materially false and misleading as to a reasonable consumer.

52. *Superiority:* A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by individual Class Members are relatively small compared to the burden and expense of individual litigation. A class action presents far fewer management difficulties than individual claims and provides the benefits of a single adjudication, economy of scale, comprehensive supervision by a single court, and the consequent reduction of inconsistent decisions.

## FIRST CAUSE OF ACTION

### Violation of New York General Business Law § 349

### (On Behalf of Plaintiff and the New York Subclass)

53. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

54. New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the State of New York.

55. Defendant's manufacturing, marketing, advertising, distribution, and sale of the Products in the State of New York occurred in the conduct of business, trade, or commerce within the meaning of New York General Business Law § 349.

56. Defendant's conduct is consumer-oriented. Defendant uniformly markets, labels, advertises, and sells the Products to consumers throughout New York through brick-and-mortar retailers, online retailers, and other consumer channels. The conduct has a broad impact on consumers at large and is directed at the public.

57. Defendant's conduct is materially misleading. Defendant's uniform representations that the Products are "Naturals" and "Natural"—made in the context of toothpastes formulated for daily use in the mouths of infants and young children—communicate to a reasonable consumer that the Products contain no synthetic ingredients. Those representations are materially false and misleading because every one of the Products is formulated with cocamidopropyl betaine, a synthetic detergent.

58. Defendant's representations are material. A reasonable consumer would attach importance to whether a children's toothpaste branded "Naturals" is in fact natural, and would not pay the price Defendant charges for the Products were such a consumer aware that they are formulated with a synthetic detergent.

59. While justifiable reliance is not an element of a claim under New York General Business Law § 349, Plaintiff and Subclass Members reasonably relied on Defendant's representations. Plaintiff and Subclass Members had no reasonable way to know that Defendant's representations were materially false and misleading: the synthetic character of an ingredient is not detectable by ordinary consumer means, and Defendant's "coconut-derived" annotation affirmatively pointed consumers away from the truth.

60. As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and Subclass Members were injured. Plaintiff and Subclass Members purchased Products that they would not have purchased—or would have paid materially less for—had Defendant's materially false and misleading representations not been made.

61. Pursuant to N.Y. General Business Law § 349(h), Plaintiff and the Subclass are entitled to recover their actual damages or fifty dollars per violation, whichever is greater; treble damages up to one thousand dollars per violation if Defendant's violation was willful or knowing; reasonable attorneys' fees and costs; and injunctive relief.

## SECOND CAUSE OF ACTION

## Violation of New York General Business Law § 350

## (On Behalf of Plaintiff and the New York Subclass)

62. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

63. New York General Business Law § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service" in the State of New York. "False advertising" means "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect." N.Y. Gen. Bus. Law § 350-a(1).

64. Defendant's manufacturing, marketing, advertising, distribution, and sale of the Products in the State of New York occurred in the conduct of business, trade, or commerce, including the advertising and labeling of a commodity, within the meaning of New York General Business Law §§ 350 and 350-a.

65. Defendant's advertising and labeling of the Products is materially misleading. Defendant uniformly advertises and labels the Products as "Naturals" and "Natural." Those representations communicate to a reasonable consumer that the Products contain no synthetic

ingredients. The representations are materially false and misleading because the Products are formulated with cocamidopropyl betaine, a synthetic detergent. Defendant's "coconut-derived" annotation compounds the falsehood.

66. Defendant's false advertising is consumer-oriented. Defendant uniformly advertises and labels the Products to consumers throughout New York through brick-and-mortar retailers, online retailers, and other consumer channels. The conduct has a broad impact on consumers at large and is directed at the public.

67. While justifiable reliance is not an element of a claim under New York General Business Law § 350, Plaintiff and the Subclass reasonably relied on Defendant's advertising and labeling of the Products, including the "Orajel Naturals" brand name and the "Natural" flavor names.

68. As a direct and proximate result of Defendant's false advertising, Plaintiff and Subclass Members were injured in fact. Plaintiff and Subclass Members purchased Products that they would not have purchased—or would have paid materially less for—had Defendant's advertising and labeling not been materially false and misleading.

69. Pursuant to N.Y. General Business Law § 350-e, Plaintiff and the Subclass are entitled to recover their actual damages or five hundred dollars per violation, whichever is greater; treble damages up to ten thousand dollars per violation if Defendant's violation was willful or knowing; reasonable attorneys' fees and costs; and injunctive relief.

## <u>THIRD CAUSE OF ACTION</u>

## <u>Common-Law Fraud</u>

**(On Behalf of Plaintiff and the Nationwide Class)**

70. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

71. Defendant made material misrepresentations of fact on the Products' packaging and in its advertising—namely, that the Products are "Naturals," "natural," and "naturally sourced"—that were false because the Products are formulated with cocamidopropyl betaine, a synthetic detergent.

72. Defendant knew its representations were false when it made them—because Defendant knows exactly how its Products are made. Defendant wrote the formula. It selected cocamidopropyl betaine, specified it, purchased it from chemical suppliers, and placed it into the Products. A manufacturer does not formulate a product with an industrially synthesized detergent and then discover, to its surprise, that the product contains one.

73. Defendant's knowledge is confirmed by its own conduct: it lists CAPB on its ingredient panels; it employs sophisticated product-development, scientific, and regulatory personnel who understand surfactant chemistry as a matter of basic professional competence; and it chose to append the "coconut-derived" gloss—a choice that makes sense only as an effort to manage the obvious tension between its formula and its branding. There is no innocent explanation for naming a product "Naturals" while formulating it with a synthetic surfactant.

74. Defendant made these misrepresentations knowingly and intentionally, with the intent that consumers, including Plaintiff and the Nationwide Class, would rely on them in deciding to purchase the Products.

75. Plaintiff and the Nationwide Class justifiably and reasonably relied on Defendant's misrepresentations in purchasing the Products, for the reasons described above: the falsity of the representations was undetectable by ordinary consumer means, and Defendant's own labeling steered diligent consumers away from the truth.

76. As a direct and proximate result of Defendant's fraud, Plaintiff and the Nationwide Class suffered injury, including the purchase price of the Products or, alternatively, the price premium attributable to Defendant's misrepresentations. Because Defendant's conduct was knowing, willful, and undertaken in conscious disregard of consumers' rights, Plaintiff and the Nationwide Class are also entitled to punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

a. Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the Federal Rules of Civil Procedure, and appointing the undersigned as Class Counsel;

b. Awarding actual damages, statutory damages, and treble damages pursuant to N.Y. General Business Law §§ 349(h) and 350-e;

c. Awarding compensatory and punitive damages on Plaintiff's common-law fraud claim;

d. Awarding restitution and/or disgorgement of all monies wrongfully obtained by Defendant as a result of the conduct alleged herein;

e. Awarding injunctive relief enjoining Defendant from continuing the unlawful, deceptive, and misleading practices alleged herein;

f. Awarding pre- and post-judgment interest as allowed by law;

g. Awarding Plaintiff and the Class their reasonable attorneys' fees, expert fees, and costs of suit pursuant to N.Y. General Business Law §§ 349(h) and 350-e and any other applicable law; and

h. Granting such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 8, 2026

By: /s/ Philip J. Furia
Philip J. Furia
**FURIA LAW LLC**
880 Third Avenue, Fifth Floor
New York, New York 10022
Tel: (646) 830-1915
furiap@furiafirm.com

*Attorneys for Plaintiff and the Class*